IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SWAN REALTY GROUP, LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>      Defendant. | 8:24CV364<br><br><br>MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS |

   A limited liability company brought this breach-of-contract action against an insurer in state court as the assignee of an insurance claim related to hail damage to property that occurred before the company bought the property from the assignor. Filing 1-1. After removal, this case is before the Court on the insurer's motion to dismiss the company's claim for loss-of-use damages on behalf of the company's sole individual member. Filing 5. The insurer asserts that the company lacks standing to assert such a claim and that, in any event, the company fails to state a claim for loss-of-use damages upon which relief can be granted. Filing 5. The company asserts that the insurer has misunderstood its claim as one for loss-of-use damages under the insurance policy when the claim is really for damages directly and proximately caused by the insurer's failure to pay for repairs to the property. Filing 11 at 1. For the reasons stated below, the insurer's Motion to Dismiss, Filing 5, is granted. The company's breach-of-contract claim will proceed further on the company's remaining damages claim for replacement and repair costs but not on its claim for loss-of-use or other consequential damages.

1

## I.  INTRODUCTION

### A.  Factual Background

Defendant's Motion to Dismiss is premised on both lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court considers the following nonconclusory allegations as true for the purposes of ruling on this Motion. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). Following Eighth Circuit precedent, the Court also considers "materials 'necessarily embraced by the pleadings.'" *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (quoting *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021), in turn quoting *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015)). This approach is appropriate for the Court's consideration of both a Rule 12(b)(6) challenge and a "facial" Rule 12(b)(1) challenge.

Plaintiff Swan Realty Group, LLC, is a limited liability company, wholly owned by Bentley Swan, with its principal place of business in Omaha, Nebraska. Filing 1-1 at 1 (¶ 1). The Court will refer to Swan Realty Group, LLC, as SRG and to SRG's sole member as Swan to avoid any confusion between the two, where SRG is a party to this lawsuit, but Swan is not. Defendant State Farm Fire and Casualty Company (State Farm) is engaged in the business of selling insurance policies including homeowner insurance policies in Nebraska. Filing 1-1 at 1 (¶ 2). At all relevant times, State Farm provided insurance coverage for various perils including hail damage for real property located in Omaha (the Property) under Policy No. 27-BVH-3514 (the Policy). Filing 1-1 at 2 (¶ 5). The named Insured for the Policy was initially Theodore J. Matsukis. Filing 1-1 at 2 (¶ 6). On or about June 7, 2022, the Property sustained severe damage as a result of a hailstorm, including damages to the roof and interior of the dwelling on the Property, as well as damage to outbuildings on the Property. Filing 1-1 at 2 (¶ 8). The Amended

Complaint does not state whether Mr. Matsukis made a claim against State Farm under the Policy for the damage from the hailstorm on June 7, 2022.

On March 17, 2023, Mr. Matsukis died, and the Estate of Theodore J. Matsukis (the Estate) became the Insured for the policy. Filing 1-1 at 2 (¶ 9). The Amended Complaint alleges, "On July 6, 2023, the Estate of Theodore J. Matsukis assigned the claim related to the damages sustained on the Property due to the hailstorm (the 'Claim') to [SRG]." Filing 1-1 at 2 (¶ 10). The assignment is nowhere to be found in the record at this point in the litigation, so that its precise terms, scope, and intent cannot be determined. On July 13, 2023, SRG purchased the Property from the Estate. Filing 1-1 at 2 (¶ 11). The Amended Complaint alleges that SRG "made a timely demand upon State Farm to pay the fair and reasonable costs of repairing the damages sustained on the Property, whereupon State Farm has admitted coverage but [has] drastically understated the scope of said damage that needs to be remediated and the cost of said remediation." Filing 1-1 at 2 (¶ 12). However, the Amended Complaint does not allege when that demand was made.

The next allegations pertinent to the Motion presently before the Court are the following:

> 23. Mr. Swan purchased the Property with the intention to sell his current home and move his family into the dwelling once repairs were finished.
>
> 24. Due to State Farm's failure to pay the fair and reasonable cost of replacing the roof and repairing the Property, Mr. Swan has not been able to move into the dwelling and sell his current home.
>
> 25. Due to State Farm's delay, Mr. Swan has been forced to cover two mortgages when he should have been able to relieve himself of the mortgage on his current home as of October 1, 2023, through a sale of the property.

Filing 1-1 at 3 (¶¶ 23–25). The allegation in ¶ 23 that Swan purchased the Property is contrary to the allegation in ¶ 11 that SRG purchased the Property from the Estate. *See* Filing 1-1 at 2 (¶ 11).

3

## B. Procedural Background

SRG filed its original Complaint and Jury Demand as the sole plaintiff in the District Court of Douglas County, Nebraska, on August 14, 2024, naming State Farm Mutual Automobile Insurance Company as the defendant. Filing 1-2 at 1. On August 23, 2024, SRG filed an Amended Complaint and Jury Demand in state court correctly identifying State Farm Fire and Casualty Company as the defendant. Filing 1-1 at 1. In its Amended Complaint, SRG alleges a single cause of action for breach of contract by State Farm "by refusing to pay for the necessary replacement of Plaintiff's roof and necessary repairs to Plaintiff's Property." Filing 1-1 at 4 (¶ 32). As to damages, SRG's Amended Complaint alleges the following:

> 33. As a direct and proximate result of State Farm's breach, Plaintiff will incur at least $670,813.47 in damages to replace the roof and repair the Property as set forth in Exhibit A, plus additional damages in an amount to be proven at trial.
>
> 34. As a direct and proximate result of State Farm's breach, Plaintiff is entitled to damages for loss of use in an amount to be proven at trial.

Filing 1-1 at 4 (¶¶ 33–34). Thus, SRG appears to seek two categories of damages for State Farm's alleged breach of the Policy: (1) damages for repair and replacement costs, and (2) damages for loss of use. *Id.* SRG did not attach the Policy to either of its pleadings. However, as mentioned below, State Farm submitted a copy of the Policy with its Motion to Dismiss. Filing 6-1.

In its Amended Complaint, SRG prays for the following relief:

> WHEREFORE, Plaintiff prays that this Court enter a judgment in its favor on the above cause of action and award Plaintiff damages in an amount to be proven at trial, but not less than $670,813.47, plus prejudgment and postjudgment interest, and its reasonable attorney fees, costs, and expenses pursuant to Neb. Rev. Stat. § 44-359, and for such further relief that the Court deems just and proper.

4

Filing 1-1 at 5. Thus, SRG's prayer does not expressly seek or distinguish between the two categories of damages that appear to be claimed in ¶ 33 and ¶ 34, respectively, of the Amended Complaint.

State Farm filed a Notice of Removal to this federal Court on September 17, 2024. Filing 1. State Farm asserts that removal is proper because there is diversity of citizenship pursuant to 28 U.S.C. §§ 1332, 1441, and 1446—where State Farm is incorporated and has its principal place of business in Illinois, and SRG is a Nebraska limited liability company with its principal place of business in Nebraska—and that the amount in controversy exceeds $75,000 exclusive of interest and costs. Filing 1 at 1–2 (¶ 3, ¶ 7). Also on September 17, 2024, State Farm filed the Motion to Dismiss now before the Court. Filing 5. State Farm filed an Index of Evidence in Support of Motion to Dismiss, Filing 6, consisting of a certified copy of Policy No. 27-BV-H351-4, Filing 6-1. In its supporting Brief, State Farm asserts *inter alia* that the Policy may be considered on its Motion to Dismiss without converting the Motion into one for summary judgment "because the Policy is embraced by the pleadings." Filing 7 at 3 (citing *Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003)). The Court agrees, and SRG does not argue otherwise. *See generally* Filing 11.

## II. LEGAL ANALYSIS

Before the Court embarks on an analysis of State Farm's Motion to Dismiss, the Court must resolve a preliminary matter raised by the parties concerning the nature of the damages claim that State Farm is challenging. Determination of this preliminary issue dictates the standards applicable to the Motion and obviates the need to consider many of the parties' arguments in their briefs.

### A. The Nature of the Challenged Claim

In its Motion to Dismiss and Brief in Support of Motion to Dismiss, State Farm does not seek dismissal of SRG's substantive claim for breach of the Policy or dismissal of SRG's damages claim for repair and replacement costs. *See generally* Filing 5; Filing 7. Instead, State Farm seeks dismissal of SRG's claim "to recover damages under the loss of use coverage of the insurance policy that were allegedly sustained by its sole member, Bentley Swan ('Bentley')." Filing 7 at 1. State Farm then asserts various arguments for dismissal of that damages claim. Filing 7 at 5–14. More specifically, State Farm asserts that SRG lacks standing to assert a claim for damages for Swan's loss of use of the Property, so that this Court lacks subject-matter jurisdiction over that damages claim. Filing 7 at 5–8. State Farm also asserts that SRG fails to state a claim for damages for loss of use of the Property under the Policy. Filing 7 at 8–14. However, SRG takes issue with State Farm's characterization of the damages claim that State Farm challenges. In its Brief in Opposition, SRG argues,

> State Farm's motion to dismiss is premised upon a misunderstanding of [SRG's] claim. [SRG] does not seek to recover loss of use damages payable under the policy. [SRG] only seeks to recover damages proximately caused by State Farm's breach of contract.

Filing 11 at 1; *see also* Filing 11 at 11. Thus, the Court must resolve the dispute or confusion about the nature of the challenged damages claim.

SRG makes clear that its substantive claim is "that State Farm breached the terms of its contract with Matsukis 'by refusing to pay for the necessary replacement of Plaintiff's roof and necessary repairs to Plaintiff's property.'" Filing 11 at 11 (quoting Filing 1-1 at 4 (¶ 32)). As to its damages claims, SRG argues, "Vitally, State Farm's failure to pay those damages"—meaning the damages for failure to pay for repair and replacement costs—"causes damages that are greater than the value of the [Policy] proceeds themselves." Filing 11 at 12. Specifically, SRG

argues that State Farm's failure to pay for repairs and replacements prevented SRG "from completing the necessary remedial work," and that failure "forced [SRG's] member to carry two mortgages when – but for State Farm's breach – its member would have only carried one." Filing 11 at 12. SRG asserts that "neither of these claims allege[s] that [SRG] was an insured entitled to recovery under the 'Loss of Use' proceeds of the insurance policy"; rather, SRG explains that these claims are "that State Farm's breach proximately caused [SRG] (and its member) compensable harm." Filing 11 at 12.

SRG acknowledges that in ¶ 34 of its Amended Complaint, it alleged, "As a direct and proximate result of State Farm's breach, Plaintiff is entitled to damages for loss of use in an amount to be proven at trial." Filing 11 at 12 (quoting Filing 1-1 at 4 (¶ 34)). However, SRG represents as follows:

> [SRG] did not intend, in making this allegation, to assert that it is entitled to recover its own loss of use damages as proceeds payable from the insurance policy. Such an allegation would have required a companion allegation that [SRG] is an insured under the policy, which [SRG] did not make. To the extent that ¶ 34 is read as [SRG] seeking loss of use proceeds under the policy, then [SRG] does not object to the dismissal of this claim. However, [SRG] asserts that ¶ 34 conveys its member's claim for carrying two mortgages, which was proximately caused by State Farm's breach of contract. ([Filing 1-1] at 3, ¶¶ 23-25).

Filing 11 at 12–13. SRG argues that even if the claim for loss-of-use damages in ¶ 34 is dismissed, SRG has still demanded the damages proximately caused by State Farm's breach of the Policy under the language in ¶ 33 of the Amended Complaint, which alleges that SRG has incurred at least damages to replace the roof and repair the property "plus additional damages in an amount to be proven at trial." Filing 11 at 13.

In reply, State Farm asserts that SRG "concedes that its allegation seeking loss of use damages under the policy fails to state a claim." Filing 12 at 2 (citing Filing 11 at 13). State Farm also argues that it is well established that an insured cannot recover extra-contractual

7

consequential damages for breach of an insurance policy absent a claim for bad faith, but SRG has not and cannot make a bad faith claim because it is not an insured. Filing 12 at 2.

The Court agrees with State Farm that SRG has eschewed any damages claim for loss-of-use proceeds under the Policy and has invited dismissal of that damages claim to the extent that ¶ 34 of its Amended Complaint could be read to assert such a damages claim. Filing 11 at 13. Thus, any claim for damages for loss-of-use proceeds under the Policy is dismissed. However, SRG has now made clear that it seeks damages beyond proceeds of the Policy consisting of damages that were "proximately caused" to SRG (and Swan) by State Farm's breach of the Policy. *See* Filing 11 at 12. This claim for damages beyond proceeds of the Policy is apparent from SRG's argument "that State Farm's breach proximately caused Swan Realty (and its member) compensable harm" and that "[v]itally, State Farm's failure to pay those damages causes damages that are greater than the value of the [Policy] proceeds themselves." Filing 11 at 12. Thus, the question is whether State Farm is entitled to dismissal of SRG's claim for damages beyond proceeds of the Policy that were proximately caused by State Farm's breach of contract. Filing 11 at 12. The only damages beyond proceeds of the Policy that SRG expressly pleads are damages to Swan for being "forced . . . to carry two mortgages when – but for State Farm's breach – [Swan] would have only carried one." Filing 11 at 12.

The Court finds that whether State Farm is entitled to dismissal of such a damages claim is subject to Federal Rule of Civil Procedure 12(b)(6) standards concerning whether SRG has stated a claim upon which relief can be granted rather than Federal Rule of Civil Procedure 12(b)(1) standards concerning SRG's standing and hence the Court's subject-matter jurisdiction. This is so because even if SRG has standing to assert that damages claim, then that damages claim ultimately is not legally cognizable. At the same time, if SRG lacks standing to assert that

8

damages claim, then the Court would still have subject-matter jurisdiction over this case, but that damages claim still would not be legally cognizable in this or any other court.

Thus, the Court turns to a summary of pertinent Rule 12(b)(6) standards.

### B. Applicable Standards

Federal Rule of Civil Procedure 12(b)(6) provides for a pre-answer motion for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion, a court is not strictly limited to consideration of the complaint. Instead, "[c]ourts may [also] consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (internal quotation marks and citations omitted); *LeMay*, 18 F.4th at 289 (explaining that the court may consider documents necessarily embraced by the pleadings). Thus, as mentioned above, the Court can properly consider the Policy, which State Farm attached as an Index to its Motion to Dismiss, because the Policy is clearly incorporated by reference, integral to SRG's claim, and embraced by the claim in the Amended Complaint for breach of the Policy. *Id.*; *LeMay*, 18 F.4th at 289. However, the Court cannot consider factual allegations that were not included in the Complaint or in materials embraced by the pleadings. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) ("While [the plaintiff] presented additional facts in his oppositions to the motion to dismiss[,] . . . those factual allegations were not included in his amended complaint and, thus, cannot be considered on a motion to dismiss.").

The typical ground for a Rule 12(b)(6) motion is the insufficiency of the factual allegations offered to state claims. "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but

'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680–83 (2009)). However—and more importantly here—Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. *See, e.g., Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (concluding that dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (concluding that the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents).

The Court will apply these standards to State Farm's Motion to Dismiss SRG's claim for damages beyond Policy proceeds that were allegedly proximately caused by State Farm's breach of the Policy.

### C. SRG's Claim for Damages Beyond Policy Proceeds Proximately Caused by State Farm's Breach

*1. State Farm's Reply Properly Addresses Factual and Legal Issues Raised in SRG's Opposition Brief*

The Court must next determine the propriety of considering State Farm's arguments for dismissal of SRG's recharacterized claim because those arguments appear for the first time in State Farm's Reply. *See* Filing 12. As the Court observed in a prior case,

> The Eighth Circuit has stated that normally, courts "refuse to entertain [ ] new argument[s]" that are "assert[ed] for the first time in [a] reply brief." *Berg v. Norand Corp.*, 169 F.3d 1140, 1146 (8th Cir. 1999). In addition, the Eighth Circuit has stated, "The district court d[oes] not abuse its discretion or otherwise commit error by following the court's local rule prohibiting new arguments submitted in a

10

reply brief." *McGhee v. Pottawattamie Cnty., Iowa*, 547 F.3d 922, 929 (8th Cir. 2008). The pertinent local rule provides, "The reply brief may not merely repeat the moving party's initial arguments, but rather must address factual or legal issues raised in the opposing brief. Without leave of court, a reply brief may not raise new grounds for relief or present matters that do not relate to the opposing party's response." NECivR 7.1(c)(2).

*Peterson v. Learfield Commc'ns, LLC*, 705 F. Supp. 3d 937, 955 (D. Neb. 2023), *appeal dismissed*, No. 23-3773 (8th Cir. Mar. 28, 2024).

As in *Peterson*, State Farm's argument concerning SRG's recharacterized damages claim is not a "new argument" raised "for the first time" in State Farm's "reply brief." *See Peterson*, 705 F. Supp. 3d at 955 (quoting *Berg*, 169 F.3d at 1146). Rather, State Farm's argument "relate[s] to the opposing party's response" and "address[es] factual or legal issues raised in the opposing brief." NECivR 7.1(c)(2). Indeed, not only does State Farm's argument address a legal issue raised in SRG's opposing brief concerning the nature of the damages claim at issue but State Farm's argument addresses an issue that the Court does not believe State Farm could reasonably have anticipated in light of ¶ 34 of SRG's Amended Complaint, where State Farm reasonably read that paragraph as a claim for damages for loss-of-use proceeds under the Policy.

Furthermore, SRG has not sought leave to file a sur-reply to address State Farm's arguments. *See* NECivR 7.1(c)(3) ("No party may file further briefs or evidence without the court's leave."). "[S]ur-replies are viewed with disfavor," so the Court was not required to allow a sur-reply *sua sponte*. *Cornice & Rose Int'l, LLC v. Four Keys, LLC*, 76 F.4th 1116, 1123 (8th Cir. 2023). The Eighth Circuit has also stated that a district court does not have to allow a non-movant to file a sur-reply if the movant "simply responded to issues raised by" the non-movant's opposition brief, which is what State Farm did here. *Id.* Therefore, the Court will consider State Farm's argument that SRG's recharacterized damages claim fails to state a claim upon which relief can be granted.

11

*2. The Parties' Arguments*

As explained above, SRG asserts that its substantive claim is "that State Farm breached the terms of its contract with Matsukis 'by refusing to pay for the necessary replacement of Plaintiff's roof and necessary repairs to Plaintiff's property.'" Filing 11 at 11 (quoting Filing 1-1 at 4 (¶ 32)). SRG argues that consequences of the breach of the Policy include damages for compensable harm proximately caused to SRG "and its member" beyond proceeds of the Policy. Filing 11 at 12. Specifically, SRG alleges "that State Farm's conduct forced its member to carry two mortgages when – but for State Farm's breach – its member would have only carried one." Filing 11 at 12 (citing Filing 1-1 at 3 (¶¶ 23–25)). SRG argues at some length that it is not asserting rights that are greater than those that the Estate assigned, Filing 11 at 13–15, and that the Policy's anti-assignment clause is irrelevant and unenforceable under Nebraska law, Filing 11 at 17.

State Farm characterizes SRG's argument as a "pivot" to an argument that it seeks damages proximately caused by State Farm's breach of contract, including damages to Swan for carrying two mortgages. Filing 12 at 2. In response to SRG's "pivot," State Farm argues,

> It is well established that absent a claim for bad faith, which [SRG] has not and could not allege as an assignee, an insured, which [SRG] is not, cannot recover extra-contractual consequential damages for breach of an insurance policy. Thus, [SRG's] claim for damages allegedly sustained by its member fails to state a claim and should be dismissed.

Filing 12 at 2. More specifically, State Farm asserts that SRG's claim for damages for Swan having to pay two mortgages rather than one "is really a claim for extra-contractual, or consequential, damages." Filing 12 at 12. State Farm argues that such extra-contractual or consequential damages are not available for breach of an insurance contract but only on a claim for bad faith against an insurer. Filing 12 at 12. State Farm argues that because SRG has not alleged that State Farm acted in bad faith, SRG's claim for extra-contractual damages fails to

12

state a claim. Filing 12 at 13. State Farm argues further that SRG cannot assert a claim for bad faith because SRG concedes that it is not an insured under the Policy and no claim for bad faith was assigned to SRG. Filing 12 at 14. Indeed, State Farm argues that Nebraska law bars a policyholder—here the Estate—from assigning a claim for bad faith. Filing 12 at 14. Finally, State Farm argues that even if such extra-contractual damages were recoverable, the damages SRG seeks were not foreseeable. Filing 12 at 15.

> 3. *SRG's Recharacterized Damages Claim Seeks Extra-Contractual, Consequential Damages Not Available for Breach of the Policy*

SRG repeatedly asserts that it is entitled to recover damages proximately caused by State Farm's breach of contract as well as the full amount of insurance proceeds due under the Policy. *See, e.g.,* Filing 11 at 12. SRG expressly alleges that the damages proximately caused by State Farm's breach consist of Swan's additional expenses from being "forced to cover two mortgages when he should have been able to relieve himself of the mortgage on his current home as of October 1, 2023, through a sale of the property" he owned before SRG purchased the Property. Filing 1-1 at 3 (¶ 25). SRG does not identify in its Amended Complaint any additional costs that SRG itself was "forced" to bear because of State Farm's breach. *See generally* Filing 1-1.

Nowhere does SRG cite any authority that the measure of damages for breach of a contract or an insurance policy is all damages "proximately caused" by the breach. *See generally* Filing 11. Nebraska law recognizes a "proximate cause" standard for damages in the insurance context, but only for a claim of bad faith, which is grounded in tort, and permits recovery of "traditional tort damages, including damages for mental distress and for economic loss, . . . when they are proximately caused by the insurer's tortious bad faith conduct." *Millard Gutter Co. v. Shelter Mut. Ins. Co*., 980 N.W.2d 420, 432 (Neb. 2022) (also explaining that "one of the justifications for recognizing the intentional tort of bad faith was concern that recoverable

13

damages for breach of the insurance contract are inadequate to compensate policyholders for personal injuries suffered as a result of an insurer's tortious bad faith"). In *Millard Gutter*, the Nebraska Supreme Court held that "even assuming without deciding that the proceeds from first-party bad faith actions can be validly assigned under Nebraska law, . . . a policyholder cannot validly assign the right to prosecute or control such an action." *Id*. at 434. Thus, in this case as in *Millard Gutter*, regardless of the validity for other purposes, the post-loss assignment from the Estate to SRG could not, as a matter of law, give SRG standing to prosecute the Estate's tort action for first-party bad faith against State Farm. *Id.* Thus, State Farm is correct that SRG both has not and cannot assert a claim for bad faith in order to recover damages "proximately caused" by State Farm's failure to pay benefits under the Policy.

State Farm asserts that in the insurance context, under Nebraska law, absent a claim for bad faith, extra-contractual or consequential damages such as the damages SRG seeks are not available for breach of an insurance contract. Filing 12 at 12. The Court is not satisfied that the case on which State Farm relies, *Olson v. Union Fire Ins. Co*., 118 N.W.2d 318, 323 (Neb. 1962), squarely stands for that proposition. In *Olson* the Nebraska Supreme Court made the following clear:

> If the insurer has exercised good faith in all of its dealings under its policy, if the settlement which it has rejected has been fully and fairly considered and has been based on an honest belief that the insurer could defeat the action or keep the judgment within the limits of the policy, and if its determination is based on a fair review of the evidence after reasonable diligence in ascertaining the facts, accompanied by competent legal advice, a court will not subject the insurer to liability in excess of policy limits if it ultimately turns out that its determination is a mistaken one.

*Olson*, 118 N.W.2d at 323. Unlike this case, *Olson* involved a claim of bad faith failure to settle with an injured third party, and more importantly, it does not mention any limitation on damages for breach of an insurance policy. *See generally id.*

14

Although Nebraska law is not clear on whether consequential damages are available for breach of an insurance contract, New York has recognized that they are not. *See Panasia Ests., Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200, 203, 886 N.E.2d 135, 137 (2008) (recognizing that "consequential damages are not recoverable in a claim for breach of an insurance contract" but they are available for breach of the covenant of good faith and fair dealing in the insurance contract context). Similarly, in a case on facts more analogous to this case than *Olson* was, the Florida Supreme Court addressed the following certified question: "In a first-party breach of insurance contract action brought by an insured against its insurer, not involving suit under [the bad faith] Florida statutes, does Florida law allow the insured to recover extra-contractual, consequential damages?" *Citizens Prop. Ins. Corp. v. Manor House, LLC*, 313 So. 3d 579, 580 (Fla. 2021) (reduced from all capitals). In that case, the insured sought "to recover extra-contractual, consequential damages for lost rental income totaling approximately $2.5 million from the insurer" as a result of the insurer's payment of a disputed amount to repair the apartment complex. *Id.* The Florida court answered the certified question "in the negative." *Id.* Specifically, the Florida court concluded "that extra-contractual, consequential damages are not available in a first-party breach of insurance contract action because the contractual amount due to the insured is the amount owed pursuant to the express terms and conditions of the policy. Extra-contractual damages are available in a separate bad faith action pursuant to [Florida statutes] but are not recoverable in this action. . . ." *Id.* at 582. This conclusion is not demonstrably contrary to Nebraska law.

Indeed, the Court concludes that the question of whether SRG can seek the damages from State Farm for Swan having to pay two mortgages is answered by general principles concerning contract damages under Nebraska law. The Nebraska Supreme Court has explained,

> Consequential damages, as opposed to direct damages, do not arise directly according to the usual course of things from a breach of contract itself. Rather, they occur as a consequence of special extracontractual circumstances known or reasonably supposed to have been contemplated by the parties when the contract was made. Direct damages refer to those which the party lost from the contract itself—in other words, the benefit of the bargain—while consequential damages refer to economic harm beyond the immediate scope of the contract. One common example of consequential damages is the lost profits or revenues from outside parties, lost business opportunities, or other sums forgone as a result of a breach of contract.

*U.S. Pipeline, Inc. v. N. Nat. Gas Co.*, 930 N.W.2d 460, 476 (Neb. 2019); *see also* Filing 12 at 12 (citing *U.S. Pipeline*, 930 N.W.2d at 476). The Nebraska Supreme Court also recognized, "Generally, a contractual waiver or exclusion of consequential damages will be upheld unless the provision is unconscionable." *Id.*

In this case, damages for the costs of covered repairs and replacements would be direct, benefit-of-the-bargain damages for breach of the Policy because they would be what the insured lost from the breach of the contract itself. *See id.* In contrast, damages for Swan's payment of two mortgages would be extra-contractual, consequential damages because they would be for economic harm to a non-policy holder beyond the immediate scope of the contract. *See id.* SRG expressly admits that neither SRG nor Swan is an insured under the Policy and that neither is entitled to recover loss-of-use damages available under the Policy. *See id.* Furthermore, a non-policy holder's damages from inability to use the property—even if that inability was the result of the insurer's failure to pay for repairs and replacements—is at the very least unlikely to have been contemplated by the insurer or the policy holder. *See id.* (explaining that consequential damages "occur as a consequence of special extracontractual circumstances known or reasonably supposed to have been contemplated by the parties when the contract was made"); *accord Machan v. UNUM Life Ins. Co. of Am.*, 116 P.3d 342, 346 (Utah 2005) ("In the context of breaches by an insurance company, [consequential damages are available] whether the company

16

has breached the express terms of the contract or the implied covenant of good faith and fair dealing [but] [i]n both cases, the insured is entitled to those [damages] reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." (internal quotation marks and citation omitted)). SRG has not pointed to any allegations in its Complaint plausibly suggesting that the insurer or the policy holder reasonably contemplated such damages from breach of the Policy. *See Mitchell*, 28 F.4th at 895 ("A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." (citation omitted)). Thus, SRG has not identified any principle of Nebraska contract law that would authorize such extra-contractual, consequential damages for breach of the obligation to pay for repairs and replacements under the Policy at issue here. *See generally* Filing 11.

SRG also has not identified any other potential basis for such consequential damages under the Policy, despite the clear statements in the Policy of what losses State Farm will and will not pay. *See generally* Filing 6-1. On the other hand, State Farm's limitation in the Policy on loss-of-use damages to those for the policy holder's loss of use—and the resulting exclusion of damages for a non-policy holder's loss of use—is not obviously unconscionable. *See U.S. Pipeline*, 930 N.W.2d at 476 (explaining that exclusions of consequential damages will be upheld unless unconscionable). Again, SRG has not pointed to any allegations in its Complaint plausibly suggesting that such a limitation on loss-of-use damages is unconscionable. *See Mitchell,* 28 F.4th at 895.

In short, there is simply no authorization in either the Policy or Nebraska contract law for SRG to recover the extra-contractual, consequential damages that SRG seeks as well as the direct benefit-of-the-bargain damages for failure to pay repair and replacement costs under the Policy.

17

See *U.S. Pipeline*, 930 N.W.2d at 476. SRG's claim for extra-contractual, consequential damages is not cognizable under the Policy or applicable law, and State Farm is entitled to dismissal of that damages claim for failure to state a claim. *See, e.g., Couzens*, 854 F.3d at 517 (dismissing under Rule 12(b)(6) because the claim was not cognizable under applicable law); *Thomas*, 2022 WL 1491102, at *18 (same); *Freeney*, 2020 WL 229996, at *2 (same).

This conclusion makes it unnecessary for the Court to consider any of the parties' other arguments.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that State Farm's Motion to Dismiss, Filing 5, is granted, as follows:

1. SRG's claim for loss-of-use damages under the Policy is dismissed; and

2. SRG's claim for extra-contractual, consequential damages beyond proceeds of the Policy—including damages such as non-party Swan's additional expenses from being "forced to cover two mortgages when he should have been able to relieve himself of the mortgage on his current home as of October 1, 2023, through a sale of the property"—is dismissed with prejudice.

This case will proceed on SRG's remaining claim for direct damages for State Farm's alleged breach of the Policy seeking the costs of replacement of the roof and repair of the Property.

Dated this 22nd day of November, 2024.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge